IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>        Plaintiff,<br><br>    v.<br><br>JOHNSON,<br><br>        Defendant. | Case No. 16-cr-00430-CRB-1<br><br>**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE** |

Defendant Terrance Johnson moves for a reduced sentence under 18 U.S.C. § 3582(c)(1)(A). See Fourth Mot. (dkt. 68); Third Mot. (dkt. 64). The Court grants Mr. Johnson's motion.

I.  **BACKGROUND**

On September 12, 2017, the Court sentenced Mr. Johnson to 88 months in prison and three years of supervised release after Mr. Johnson pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and possessing with intent to distribute cocaine base, cocaine, and methamphetamine in violation of 21 U.S.C. §§ 941(a)(1), (b)(1)(C). Mr. Johnson had several previous convictions. As relevant here, in 2005, he was convicted of "Possession of a Controlled Substance while Armed" and evading a peace officer. In 2006, he was convicted of possession with intent to distribute methamphetamine. PSR (dkt. 21) at 8–10.

Mr. Johnson was committed to FCI Safford in Safford, Arizona on January 4, 2018. See Karmel Decl. Ex. A (dkt. 60-1) at 2. He has now served just under 39 months of his sentence, and he is 37 years old.

The instant motion is Mr. Johnson's fourth attempt to obtain a reduced sentence.

1   Mr. Johnson first moved for a reduced sentence under 18 U.S.C. § 3582(c)(1)(A) on
2   August 28, 2020. See First Mot. (dkt. 43). The Court rejected his motion because Mr.
3   Johnson's medical circumstances—his sinus arrhythmia that had not persisted, common
4   hypertension, depression, and premature birth—did not constitute "extraordinary and
5   compelling reasons" to reduce his sentence. See Order Denying First Mot. (dkt. 55). Mr.
6   Johnson filed a second motion on December 22, 2020, citing his obesity, which he had not
7   previously raised, and his positive COVID-19 test. See Second Mot. (dkt. 56). The Court
8   denied this motion because Mr. Johnson had failed to exhaust his administrative remedies.
9   See Order Denying Second Mot. (dkt. 63). Mr. Johnson filed a third motion on January
10  19, 2021, see Third Mot., but the Court stayed that motion because Mr. Johnson still had
11  not exhausted his administrative remedies, see Order Staying Mot. to Reduce Sentence
12  (dkt. 67).

13  On March 13, 2021, more than thirty days after requesting that the Bureau of
14  Prisons move for compassionate release on his behalf, Mr. Johnson filed the instant
15  motion. See Fourth Mot. at 3–4. That motion incorporates the reasoning and arguments
16  set forth in Mr. Johnson's second and third motions. Id. at 1 n.1. The same goes for the
17  government's opposition. See Opp. to Fourth Mot. (dkt. 69) at 1.[1] Mr. Johnson argues that
18  as a black man with clinical obesity, he is at heightened risk of serious illness or death
19  should he contract COVID-19, and that he has in fact contracted COVID-19. See Fourth
20  Mot.; Third Mot. at 3–6.[2] Mr. Johnson was confirmed to have COVID-19 on December
21  18, 2020. See Karmel Decl. (dkt. 60) ¶ 10.

22  **II.    LEGAL STANDARD**

23  The Sentencing Reform Act of 1984, 18 U.S.C. § 3551 et seq., does not generally
24  permit federal courts to "modify a term of imprisonment once it has been imposed."
25  Dillon v. United States, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)).
26  Congress has provided a few narrow exceptions to that rule. As relevant here, a court may

---

[1] Therefore, the Court considers the cumulative arguments of Mr. Johnson and the government.
[2] The Court's reasoning does not depend on Mr. Johnson's race.

2

reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) if certain procedural requirements are met and if "extraordinary and compelling reasons warrant such a reduction."

Before the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, a defendant could not bring a motion for compassionate release under § 3582(c). Under the original compassionate release framework, enacted as part of the Comprehensive Crime Control Act of 1984, only the Director of the Bureau of Prisons could move for compassionate release on a defendant's behalf. See 18 U.S.C. § 3582(c)(1)(A) (2017).

But effective December 2018, the First Step Act permits a defendant to move for relief under § 3582(c)(1)(A) if the defendant satisfies the statute's exhaustion requirements. See First Step Act § 603(b)(1). The defendant may bring a motion only once he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to bring the motion on his behalf, or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

The First Step Act did not alter the original framework's requirements that a court consider the factors set forth in 18 U.S.C. § 3553(a) before granting a motion for a reduced sentence, see 18 U.S.C. § 3582(c)(1)(A), and that any sentence reduction under § 3582(c) must be "consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A).

Before the First Step Act enabled defendants to bring their own motions for compassionate release under § 3582(c)(1)(A), the Sentencing Commission promulgated a policy statement enumerating circumstances constituting "extraordinary and compelling reasons" to reduce a sentence, U.S.S.G. § 1B1.13 cmt n.1, and directing that a court may reduce a sentence under § 3582(c)(1)(A) only if the court finds that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," U.S.S.G. § 1B1.13(2). The policy statement refers to motions brought by the Director of the Bureau of Prisons, and not to motions brought by defendants, as defendants

3

could not bring such motions when the policy statement was last amended.  See U.S.S.G. § 1B1.13.

Because the policy statement has not been updated or modified since Congress enacted the First Step Act, it is not obvious whether it applies to motions brought by defendants.  Several U.S. Circuit Courts have held that because the policy statement refers only to motions brought by the director of the Bureau of Prisons, it does not apply to motions brought by defendants.  See Brooker, 976 F.3d 228; United States v. Gunn, 930 F.3d 1178 (7th Cir. 2020); United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). According to these courts, the Sentencing Commission has not promulgated any policy statement that limits district courts' discretion to grant motions brought by defendants under § 3582(c).  See, e.g., Brooker, 976 F.3d at 237.  If that is right, district courts are neither required to consider whether the defendant is a danger to the community under U.S.S.G. § 1B1.13(2) nor limited to recognizing only those "extraordinary and compelling" circumstances enumerated by the Sentencing Commission in U.S.S.G. § 1B1.13 cmt n.1.  Other courts have disagreed, holding that U.S.S.C. § 1B1.13 controls to the extent it does not squarely conflict with § 3582(c)(1)(A), as amended by the First Step Act.  See, e.g., United States v. Lynn, No. 89-0072-WS, 2019 WL 3805349 (S.D. Ala. Aug. 13, 2019).

Today, the Court need not resolve whether the Sentencing Commission's policy statement applies to motions brought by defendants.  Even if the policy statement applies only to motions brought by the Director of the Bureau of Prisons, the Court presently agrees with the policy statement's definition of "extraordinary and compelling reasons" and the policy statement's guidance that people who present a danger to the community should not be granted compassionate release.

First, the Sentencing Commission's enumerated circumstances constituting "extraordinary and compelling reasons" to reduce a sentence all relate to a defendant's individual characteristics or conditions—that is, some combination of the defendant's health, age, and family situation.  See U.S.S.G. § 1B1.13 cmt n.1.  For example, if the

4

defendant suffers from "a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" or "a serious physical or mental condition, . . . serious functional or cognitive impairment, or . . . deteriorating physical or mental health because of the aging process . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," the "extraordinary and compelling reasons" standard is satisfied. See U.S.S.G. § 1B1.13 cmt. n.1(A)(i)(i)–(ii).  The standard is also satisfied if "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75% of his or her term of imprisonment, whichever is less," U.S.S.G. § 1B1.13 cmt. n.1(B), or in certain circumstances requiring the defendant to care for minor children or a spouse or registered partner, id. § 1B1.13 cmt. n.1(C).  Finally, the standard is satisfied if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary or compelling reason other than, or in combination with," the above-described circumstances.  U.S.S.G. § 1B1.13 cmt. n.1(D).

       The Sentencing Commission's enumerated circumstances constituting "extraordinary and compelling reasons" to reduce a sentence are sensible.  Although a future motion could conceivably persuade the Court that these circumstances fail to capture the full range of "extraordinary and compelling reasons" to reduce a sentence under § 3582(c)(1)(A), the Court is yet to encounter such a motion.

       Second, as discussed above, the Sentencing Commission has directed that a court may reduce a sentence under § 3582(c)(1)(A) only if the court finds that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).  Section 3142(g), in turn, requires courts to "take into account" four factors when determining the defendant's dangerousness: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the

5

person's release." 18 U.S.C. § 3142(g).

This framework is also sensible. Indeed, the Court would not exercise its discretion under § 3582(c)(1)(A) to grant relief to a defendant that the Court determines is a danger to the community. Thus, even if permitted, the Court sees no reason to deviate from the policy statement's dangerousness requirement, which ensures that the Court carefully weighs the public's interest in safety before reducing a defendant's sentence.

As to both aspects of the policy statement, the Court also presently finds that it would be illogical to apply a stricter standard to motions brought by the Director of the Bureau of Prisons than to motions brought by defendants. No one disputes that the Sentencing Commission's policy statement continues to apply to motions brought by the Director of the Bureau of Prisons. See, e.g., Brooker, 976 F.3d at 235. The Court declines to approach motions brought by the government seeking a defendant's release on behalf of a defendant with more scrutiny than motions brought by defendants seeking their own release. Thus, the Court continues to rely on the policy statement as establishing helpful objective guideposts for evaluating whether a defendant should be granted compassionate release under § 3582(c)(1)(A).

### III. DISCUSSION

Because Mr. Johnson has satisfied the statute's exhaustion requirements, has shown "extraordinary and compelling reasons" for a sentence reduction, and is not a danger to the community, the Court grants his motion for compassionate release under § 3582(c)(1)(A).

First, Mr. Johnson has satisfied § 3582(c)(1)(A)'s exhaustion requirements. As the government acknowledges, more than thirty days have elapsed since Mr. Johnson sent the warden of his facility a letter requesting that the Bureau of Prisons move for compassionate release on Mr. Johnson's behalf, for the reasons set forth in the instant motion. See Opp. to Fourth Mot. at 1.

Second, Mr. Johnson has shown that "extraordinary and compelling reasons" justify a reduced sentence. In particular, Mr. Johnson has shown that he suffers from "a serious physical or mental condition . . . that substantially diminishes the ability of the defendant

to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." See U.S.S.G. § 1B1.13 cmt. n.1(A)(ii).  As the Court has previously explained, medical conditions from which a defendant is not expected to recover and that render a defendant "uniquely vulnerable to serious illness if he contracts COVID-19" substantially diminish a defendant's ability "to provide self-care within the environment of a correctional facility."  See United States v. Jay, No. 17-cr-00176-CRB-1, 2020 WL 3103796, at *2 (N.D. Cal. June 11, 2020).  Here, the government concedes that Mr. Johnson has shown that extraordinary and compelling circumstances warrant his release, based on Mr. Johnson's obesity.  See Opp. to Second Mot. (dkt. 59) at 14.  And although Mr. Johnson has already tested positive for COVID-19, the Court declines to second-guess that concession given the uncertain science regarding reinfection.[3]  Similarly, because neither party has raised the timing of Mr. Johnson's potential vaccination, see generally Opp. to Fourth Mot.; Opp. to Third Mot. (dkt. 65), the Court declines to speculate on that issue.

Third, the Court finds that Mr. Johnson is not "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).

In doing so, the Court acknowledges Mr. Johnson's criminal history.  The Court first considers "the nature and circumstances of the offense charged."  18 U.S.C. § 3142(g).  Mr. Johnson was convicted of being a felon in possession of a firearm and possession with intent to distribute cocaine, cocaine base, and methamphetamine.  These firearm and drug offenses constitute serious crimes that, by their nature, endanger the community.  Next, the Court considers "the weight of the evidence" against Mr. Johnson. 18 U.S.C. § 3142(g).  There is no dispute that Mr. Johnson committed the offenses charged, as he admitted when pleading guilty.  And when considering Mr. Johnson's "history and characteristics," id., the Court recognizes that Mr. Johnson has prior

---

[3] The CDC has stated that "reports of reinfection have been infrequent," but that the CDC "expect[s] to see more cases of reinfection" as the pandemic continues.  CDC, "Duration of Isolation and Precautions for Adults with COVID-19," updated Oct. 19, 2020, available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html.

7

1　convictions for dangerous offenses—namely, possession of a controlled substance while
2　armed and possession with intent to distribute methamphetamine.

3　　　But Mr. Johnson's complete "history and characteristics" also includes Mr.
4　Johnson's exemplary conduct since being indicted in 2016—conduct that indicates he is no
5　longer a danger to the community.  Before he was sentenced, the Probation Office
6　informed the Court that Mr. Johnson had "kept all court appearances, complied with
7　conditions of pretrial release, and [was] not viewed as a flight risk or a danger to the
8　community."  See PSR (dkt. 21) at 3.  Thus, the Probation Office recommended (and the
9　Court agreed) that Mr. Johnson be permitted to self-surrender.  The conditions with which
10　Mr. Johnson complied before his self-surrender were not trivial.  See Order re Conditions
11　of Pretrial Release (dkt. 11).  They included drug, alcohol, and mental health counseling
12　and regular drug testing, among other restrictions in place for over a year.  Id.  Once in
13　custody, Mr. Johnson's behavior remained exemplary.  His two disciplinary infractions—
14　one for having too many stamps, and one for holding hands with his wife during
15　visitation—hardly indicate that he poses a threat to the community.  Thus, the Court
16　concludes that if Mr. Johnson was previously a danger to the community, he no longer is.

17　　　For the same reasons, the Court concludes that the sentencing factors set forth in 18
18　U.S.C. § 3553(a) weigh in favor of reducing Mr. Johnson's sentence.  See 18 U.S.C.
19　§ 3582(c)(1)(A).  Mr. Johnson has served roughly 39 months in custody in addition to the
20　time he spent complying with strict conditions of pretrial release.  The Court is confident
21　that Mr. Johnson will continue his exemplary behavior while complying with conditions of
22　supervised release.

23　**IV.　CONCLUSION**

24　　　For the foregoing reasons, the Court GRANTS Mr. Johnson's motion for a reduced
25　sentence.  Based on the timing of Mr. Johnson's positive test and CDC guidance, see CDC,
26　"When You Can be Around Others After You Had or Likely Had COVID-19," updated
27　Dec. 1, 2020, available at https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-
28　sick/end-home-isolation.html, there is no need for Mr. Johnson to spend another day in

prison. The Court thus ORDERS Mr. Johnson's immediate release.

The Court ORDERS Mr. Johnson to follow the release plan set forth in his reply brief in support of his second motion, see Reply (dkt. 61) at 10, as incorporated in his third motion, see Third Mot. at 11–12, including that Mr. Johnson complete a 14-day quarantine in the residence to which he is being released. Effective immediately upon his release, Mr. Johnson will be subject to the Supervised Release term and conditions imposed as part of his original sentence. See Judgment at 3.

The Court ORDERS the government to serve a copy of this order on the Warden at FCI Safford immediately.

**IT IS SO ORDERED.**

Dated: March 22, 2021

CHARLES R. BREYER
United States District Judge